MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ALEJANDRO MENA ROQUE, EDIN
LICETH YOS YAQUI, ELBER ULISER
VASQUEZ MIRANDA, MARCO GARCIA
MENDOZA, and PEDRO TICUN COLO,
*individually and on behalf of others similarly*
*situated,*

                        *Plaintiffs*,

            -against-

22 NOODLE MARKET CORP.  (D/B/A
OBAO), LUCK WATANASUPARP ,
KANRUTHAI MAHMUANG , and VIWON
DARNCHARNJITT ,

                  *Defendants.*
-----------------------------------------------------------X

             **COMPLAINT**

     **COLLECTIVE ACTION UNDER**
        **29 U.S.C. § 216(b)**

          **ECF Case**

      Plaintiffs Alejandro Mena Roque, Edin  Liceth Yos Yaqui, Elber Uliser Vasquez Miranda,

Marco Garcia Mendoza, and Pedro Ticun Colo , individually and on behalf of others similarly

situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against 22 Noodle Market Corp. (d/b/a Obao),

("Defendant Corporation"), Luck Watanasuparp,    Kanruthai Mahmuang, and    Viwon

Darncharnjitt, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## <u>NATURE OF ACTION</u>

      1.      Plaintiffs are former employees of Defendants 22 Noodle Market Corp. (d/b/a Obao),

Luck Watanasuparp, Kanruthai Mahmuang, and Viwon Darncharnjitt.

2.      Defendants own, operate, or control a Thai and Vietnamese restaurant, located at 222 East 53rd Street New York, NY 10022 under the name "Obao".

3.      Upon information and belief, individual Defendants Luck Watanasuparp, Kanruthai Mahmuang, and Viwon Darncharnjitt, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers, food preparers and dishwashers at the restaurant located at 222 East 53rd Street New York, NY 10022.

5.      Plaintiffs were employed as food preparers and dishwashers and ostensibly as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cutting vegetables, peeling chicken and shrimp, cutting meat,  marinating meat, preparing sauces,  slicing meat, sweeping and mopping, doing inventory, cleaning the refrigerators, cleaning the kitchen, cleaning the basement, deconstructing and tying boxes, taking out the trash, washing kitchen equipment, carrying down and stocking deliveries in the basement, bringing up a barrel of beer for the waiter, washing the dishwasher, and cleaning the bathroom (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hour's compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lowered tip-credit rate.

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York

Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Thai and Vietnamese restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.    Plaintiff Alejandro Mena Roque ("Plaintiff Mena" or "Mr. Mena") is an adult individual residing in Kings County, New York.

22.    Plaintiff Mena was employed by Defendants at "Obao" from approximately February 7, 2012 until on or about July 19, 2018.

23.    Plaintiff Edin Liceth Yos Yaqui ("Plaintiff Yos" or "Mr. Yos") is an adult individual residing in New York County, New York.

24.    Plaintiff Yos was employed by Defendants at "Obao" from approximately July 2016 until on or about July 13, 2018.

25.    Plaintiff Elber Uliser Vasquez Miranda ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Bronx County, New York.

26.    Plaintiff Vasquez was employed by Defendants at "Obao" from approximately 2011 until on or about July 17, 2018.

27.    Plaintiff Marco Garcia Mendoza ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in New York County, New York.

28.    Plaintiff Garcia was employed by Defendants at "Obao" from approximately March 2012 until on or about July 20, 2018.

29.    Plaintiff Pedro Ticun Colo ("Plaintiff Ticun" or "Mr. Ticun") is an adult individual residing in Queens County, New York.

30.    Plaintiff Ticun was employed by Defendants at "Obao" from approximately April 2012 until on or about July 13, 2018.

*Defendants*

31.    At all relevant times, Defendants owned, operated, or controlled a Thai and Vietnamese restaurant, located at 222 East 53rd Street New York, NY 10022 under the name "Obao".

32.    Upon information and belief, 22 Noodle Market Corp. (d/b/a Obao) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 222 East 53rd Street New York, NY 10022.

33.    Defendant Luck Watanasuparp is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Luck Watanasuparp is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Luck Watanasuparp possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs,

establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.     Defendant Kanruthai Mahmuang is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Kanruthai Mahmuang is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Kanruthai Mahmuang possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.     Defendant Viwon Darncharnjitt is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Viwon Darncharnjitt is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Viwon Darncharnjitt possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

36.     Defendants operate a Thai and Vietnamese restaurant located in the Midtown East section of Manhattan in New York City.

37.     Individual Defendants, Luck Watanasuparp, Kanruthai Mahmuang, and Viwon Darncharnjitt, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

38.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

39.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

40.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

41.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

42.    Upon information and belief, Individual Defendants Luck Watanasuparp, Kanruthai Mahmuang and Viwon Darncharnjitt  operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

 a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

 b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

 c) transferring assets and debts freely as between all Defendants,

 d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

 e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

 f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

43.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

44.     In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

45.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

46.     Plaintiffs are former employees of Defendants who were employed as food preparers and dishwashers and ostensibly as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

47.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alejandro Mena Roque*

48.     Plaintiff Mena was employed by Defendants from approximately February 7, 2012 until on or about July 19, 2018.

49.     Defendants ostensibly employed Plaintiff Mena as a delivery worker and later as a dishwasher.

50.     However, Plaintiff Mena was also required to spend a significant portion of his work day performing the non-tipped duties described above.

51.     Although Plaintiff Mena ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

52.     Plaintiff Mena regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

53.     Plaintiff Mena's work duties required neither discretion nor independent judgment.

54.     Throughout his employment with Defendants, Plaintiff Mena regularly worked in excess of 40 hours per week.

55.     From approximately August 2012 until on or about August 2016, Plaintiff Mena worked from approximately 12:00 p.m. until on or about 12:00 a.m. to 12:30 a.m. Mondays and Tuesdays, from approximately 12:00 p.m. until on or about 10:00 p.m. to 10:20 p.m. on Thursdays, and from approximately 12:00 p.m. until on or about 11:30 p.m. to 12:00 a.m. Saturdays and Sundays (typically 57 to 59.3 hours per week).

56.     From approximately August 2016 until on or about December 2016, Plaintiff Mena worked from approximately 12:00 p.m. until on or about 10:00 p.m. to 10:20 p.m. Mondays, Tuesdays and Thursdays and from approximately 2:00 p.m. until on or about 11:30 p.m. to 12:00 a.m. Saturdays and Sundays (typically 49 to 50.9 hours per week).

57.     From approximately January 2017 until on or about July 19, 2018, Plaintiff Mena worked from approximately 12:00 p.m. until on or about 9:00 p.m. to 9:20 p.m. Mondays, Tuesdays and Thursdays and from approximately 2:00 p.m. until on or about 11:30 p.m. to 12:00 a.m. Saturdays and Sundays (typically 46 to 47.9 hours per week).

58.     From approximately August 2012 until on or about August 2016, Defendants paid Plaintiff Mena his wages in cash.

59.      From approximately August 2016 until on or about July 19, 2018, Defendants paid Plaintiff Mena his wages by check.

60.      From approximately August 2012 until on or about December 2014, Defendants paid Plaintiff Mena a fixed salary of $75 per day for 4 days and $6.00 per hour for his hours worked one day a week.

61.      From approximately January 2015 until on or about August 2016, Defendants paid Plaintiff Mena a fixed salary of $80 per day for 4 days and $7.50 per hour for his hours worked one day a week.

62.      From approximately August 2016 until on or about July 2017, Defendants paid Plaintiff Mena $9.00 per hour for all his hours worked.

63.      From approximately July 2017 until on or about January 2018, Defendants paid Plaintiff Mena $9.00 per hour for all his hours worked.

64.      From approximately January 2018 until on or about July 2018, Defendants paid Plaintiff Mena $10.85 per hour.

65.      Plaintiff Mena's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

66.      For example, Defendants required Plaintiff Mena to work an additional 20 minutes to 30 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

67.      Plaintiff Mena was never notified by Defendants that his tips were being included as an offset for wages.

68.      Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mena's wages.

69.     Defendants withheld a portion of Plaintiff Mena's tips; specifically, Defendants pocketed around 15% of all the tips customers paid through Seamless (around $50 to $60 per week) and around 5% of all the tips paid by customers through credit cards.

70.     Plaintiff Mena was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

71.     On a number of occasions, Defendants required Plaintiff Mena to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

72.     Defendants took improper and illegal deductions from Plaintiff Mena's wages; specifically, Defendants deducted one hour from Plaintiff's Mena working schedule when he arrived 10 or 15 minutes past his regular schedule.

73.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mena regarding overtime and wages under the FLSA and NYLL.

74.     Defendants did not provide Plaintiff Mena an accurate statement of wages, as required by NYLL 195(3).

75.     In fact, Defendants adjusted Plaintiff Mena's paystubs so that they reflected inaccurate wages and hours worked.

76.     Defendants did not give any notice to Plaintiff Mena, in English and in Spanish (Plaintiff Mena's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.     Defendants required Plaintiff Mena to purchase "tools of the trade" with his own funds—including a bicycle and the bicycle's maintenance.

*Plaintiff Edin Liceth Yos Yaqui*

78.     Plaintiff Yos was employed by Defendants from approximately July 2016 until on or about July 13, 2018.

79.    Defendants ostensibly employed Plaintiff Yos as a delivery worker and a food preparer.

80.    However, Plaintiff Yos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

81.    Although Plaintiff Yos ostensibly was employed as a delivery worker and a food preparer, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

82.    Plaintiff Yos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

83.    Plaintiff Yos' work duties required neither discretion nor independent judgment.

84.    Throughout his employment with Defendants, Plaintiff Yos regularly worked in excess of 40 hours per week.

85.    From approximately July 2016 until on or about December 2017, Plaintiff Yos worked from approximately 2:00 p.m. until on or about 11:30 p.m. four days a week and from approximately 11:00 a.m. until on or about 9:00 p.m. one day a week (typically 48 hours per week).

86.    From approximately January 2018 until on or about July 13, 2018, Plaintiff Yos worked from approximately 3:00 p.m. until on or about 11:30 p.m. three days a week, from approximately 2:00 p.m. until on or about 11:30 p.m. one day a week, and from approximately 11:00 a.m. until on or about 9:00 p.m. one day a week (typically 45 hours per week).

87.    From approximately July 2016 until on or about January 2017, Defendants paid Plaintiff Yos his wages in a combination of personal checks and checks.

88.    From approximately February 2017 until on or about July 13, 2018, Defendants paid Plaintiff Yos his wages by check.

89.    From approximately July 2016 until on or about December 2016, Defendants paid Plaintiff Yos $7.50 per hour for his regular hours and $10.25 for some of his overtime hours.

90.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Yos $9.50 per hour for his regular hours and $13.50 per hour for some of his overtime hours.

91.    Plaintiff Yos' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

92.    For example, Defendants required Plaintiff Yos to work an additional 15 to 30 minutes past his scheduled departure time two or three days per week, and did not pay him for the additional time he worked.

93.    Plaintiff Yos was never notified by Defendants that his tips were being included as an offset for wages.

94.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Yos' wages.

95.    Defendants withheld a portion of Plaintiff Yos' tips; specifically, Defendants pocketed 15% of all tips customers paid through Seamless and around 5% of all the tips paid by customers through credit cards.

96.    Plaintiff Yos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

97.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Yos regarding overtime and wages under the FLSA and NYLL.

98.    Defendants did not provide Plaintiff Yos an accurate statement of wages, as required by NYLL 195(3).

99.    In fact, Defendants adjusted Plaintiff Yos' paystubs so that they reflected inaccurate wages and hours worked.

100.    Defendants did not give any notice to Plaintiff Yos, in English and in Spanish (Plaintiff Yos' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.    Defendants required Plaintiff Yos to purchase "tools of the trade" with his own funds—including one bicycle, a helmet, a chain and a lock.

### Plaintiff Elber Uliser Vasquez Miranda

102.    Plaintiff Vasquez was employed by Defendants from approximately 2011 until on or about July 17, 2018.

103.    Defendants ostensibly employed Plaintiff Vasquez as a delivery worker.

104.    However, Plaintiff Vasquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

105.    Although Plaintiff Vasquez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

106.    Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

107.    Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

108.    Throughout his employment with Defendants, Plaintiff Vasquez regularly worked in excess of 40 hours per week.

109.    From approximately August 2012 until on or about August 2016, Plaintiff Vasquez worked from approximately 11:00 a.m. until on or about 12:30 a.m. to 1:00 a.m. 2 days a week and from approximately 11:00 a.m. until on or about 10:00 p.m. 3 days a week (typically 57 hours per week).

110.    From approximately August 2016 until on or about December 2017, Plaintiff Vasquez worked from approximately 10:00 a.m. until on or about 9:00 p.m. 5 days a week (typically 55 hours per week).

111.    From approximately January 2018 until on or about July 17, 2018, Plaintiff Vasquez worked from approximately 10:00 a.m. until on or about 8:00 p.m. on Mondays, from approximately 1:00 p.m. until on or about 11:30 p.m. on Tuesdays, from approximately 11:00 a.m. until on or about 9:00 p.m. on Wednesdays, from approximately 2:00 p.m. until on or about 11:30 p.m. on Thursdays, and from approximately 10:30 a.m. until on or about 6:00 p.m. on Fridays (typically 42.5 hours per week).

112.    From approximately August 2012 until on or about August 2014, Defendants paid Plaintiff Vasquez his wages in cash.

113.    From approximately September 2014 until on or about 2016, Defendants paid Plaintiff Vasquez his wages by personal check.

114.    From approximately 2016 until on or about July 17, 2018, Defendants paid Plaintiff Vasquez his wages in a combination of personal checks and checks.

115.    From approximately August 2012 until on or about August 2014, Defendants paid Plaintiff Vasquez $6.00 per hour for all his hours worked.

116.    From approximately August 2014 until on or about August 2015, Defendants paid Plaintiff Vasquez $6.50 per hour for all his hours worked.

117.    From approximately August 2015 until on or about December 2016, Defendants paid Plaintiff Vasquez $7.50 per hour for his regular hours and $10.25 per hour for some of his overtime hours.

118.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Vasquez $9.00 per hour for his regular hours and $13.50 per hour for some of his overtime hours.

119.    From approximately January 2018 until on or about July 17, 2018, Defendants paid Plaintiff Vasquez $10.85 per hour for his regular hours and $17.25 per hour for some of his overtime hours.

120.    Plaintiff Vasquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

121.    For example, Defendants required Plaintiff Vasquez to work an additional one hour and 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

122.    Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

123.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

124.    Defendants withheld a portion of Plaintiff Vasquez's tips; specifically, Defendants pocketed  15% of all the tips customers paid through Seamless and around 5% of all the tips paid by customers through credit cards.

125.    Plaintiff Vasquez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

126.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vasquez regarding overtime and wages under the FLSA and NYLL.

127.    Defendants did not provide Plaintiff Vasquez an accurate statement of wages, as required by NYLL 195(3).

128.    In fact, Defendants adjusted Plaintiff Vasquez's paystubs so that they reflected inaccurate wages and hours worked.

129. Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

130. Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including five bicycles, bicycle maintenance, a lock, two helmets and four vests.

*Plaintiff Marco Garcia Mendoza*

131. Plaintiff Garcia was employed by Defendants from approximately March 2012 until on or about July 20, 2018.

132. Defendants ostensibly employed Plaintiff Garcia as a delivery worker and food preparer.

133. However, Plaintiff Garcia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

134. Although Plaintiff Garcia ostensibly was employed as a delivery worker and food preparer, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

135. Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

136. Plaintiff Garcia's work duties required neither discretion nor independent judgment.

137. Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

138. From approximately March 2012 until on or about June 2015, Plaintiff Garcia worked from approximately 12:00 p.m. until on or about 12:00 a.m. 5 days a week (typically 60 hours per week).

139. From approximately June 2015 until on or about July 20, 2018, Plaintiff Garcia worked from approximately 11:00 a.m. until on or about 9:00 p.m. three days a week, from

approximately 5:00 p.m. until on or about 11:30 p.m. one day a week, and from approximately 12:00 p.m. until on or about 12:00 a.m. one day a week (typically 48.5 hours per week).

140.    From approximately March 2012 until on or about December 2016, Defendants paid Plaintiff Garcia his wages in a combination of personal checks or cash and checks.

141.    From approximately January 2017 until on or about July 20, 2018, Defendants paid Plaintiff Garcia his wages by check.

142.    From approximately March 2012 until on or about December 2015, Defendants paid Plaintiff Garcia $6.25 per hour for all of his hours worked.

143.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Garcia $7.50 per hour for his regular hours and $10.75 per hour for some of his overtime hours.

144.    From approximately January 2017 until on or about December 2017 defendants paid Plaintiff Garcia $9.00 per hour for his regular hours and $13.50 per hour for some of his overtime hours.

145.    From approximately January 2018 until on or about July 20, 2018, Defendants paid Plaintiff Garcia $10.85 per hour for his regular hours and $17.25 per hour for some of his overtime hours.

146.    Plaintiff Garcia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

147.    For example, Defendants required Plaintiff Garcia to work an additional 30 minutes his scheduled departure time two days a week, and did not pay him for the additional time he worked.

148.    Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages.

149.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

150.    Defendants withheld a portion of Plaintiff Garcia's tips; specifically, Defendants pocketed 15% of all the tips customers paid through Seamless and around 5% of all the credit card tips customers paid.

151.    Plaintiff Garcia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

152.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

153.    Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

154.    In fact, Defendants adjusted Plaintiff Garcia's paystubs so that they reflected inaccurate wages and hours worked.

155.    Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

156.    Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including one bicycle, two lights, a helmet and a jacket.

*Plaintiff Pedro Ticun Colo*

157.    Plaintiff Ticun was employed by Defendants from approximately April 2012 until on or about July 13, 2018.

158.    Defendants ostensibly employed Plaintiff Ticun as a delivery worker.

159.    However, Plaintiff Ticun was also required to spend a significant portion of his work day performing the non-tipped duties described above.

160.    Although Plaintiff Ticun ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

161.     Plaintiff Ticun regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

162.     Plaintiff Ticun's work duties required neither discretion nor independent judgment.

163.     Throughout his employment with Defendants, Plaintiff Ticun regularly worked in excess of 40 hours per week.

164.     From approximately April 2012 until on or about December 2013, Plaintiff Ticun worked from approximately 11:30 a.m. until on or about 12:00 a.m. 6 days a week (typically 75 hours per week).

165.     From approximately January 2014 until on or about June 2014, Plaintiff Ticun worked from approximately 11:30 a.m. until on or about 12:00 a.m. 6 days a week (typically 75 hours per week).

166.     From approximately June 2014 until on or about December 2017, Plaintiff Ticun worked from approximately 2:00 p.m. until on or about 11:30 p.m. on Mondays, from approximately 12:00 p.m. until on or about 11:30 p.m. on Tuesdays, from approximately 12:00 p.m. until on or about 10:00 p.m. on Wednesdays, from approximately 11:00 a.m. until on or about 5:00 p.m. on Saturdays, and from approximately 12:00 p.m. until on or about 11:30 p.m. on Sundays (typically 48.5 hours per week).

167.     From approximately January 2018 until on or about July 13, 2018, Plaintiff Ticun worked from approximately 1:00 p.m. until on or about 11:30 p.m. on Mondays, from approximately 11:00 a.m. until on or about 9:00 p.m. on Tuesdays, from approximately 12:00 p.m. until on or about 10:00 p.m. on Wednesdays, from approximately 2:00 p.m. until on or about 11:30 p.m. on Thursdays, and from approximately 11:00 a.m. until on or about 8:00 p.m. on Fridays (typically 49 hours per week).

168.     From approximately April 2012 until on or about June 2014, Defendants paid Plaintiff Ticun his wages in cash.

169.    From approximately June 2014 until on or about December 2017, Defendants paid Plaintiff Ticun his wages in a combination of personal check or cash and check.

170.    From approximately January 2018 until on or about July 13, 2018, Defendants paid Plaintiff Ticun his wages by check.

171.    From approximately April 2012 until on or about December 2013, Defendants paid Plaintiff Ticun a fixed salary of $75 per day.

172.    From approximately January 2014 until on or about June 2014, Defendants paid Plaintiff Ticun a fixed salary of $90 per day.

173.    From approximately June 2014 until on or about December 2015, Defendants paid Plaintiff Ticun $6.00 per hour for all his hours worked.

174.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Ticun $7.50 per hour for his regular hours and $10.85 per hour for some of his overtime hours.

175.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Ticun $9.00 per hour for his regular hours and $13.50 per hour for some of his overtime hours.

176.    From approximately January 2018 until on or about July 13, 2018, Defendants paid Plaintiff Ticun $10.85 per hour for his regular hours and $17.25 per hour for some of his overtime hours.

177.    Plaintiff Ticun's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

178.    For example, Defendants required Plaintiff Ticun to work an additional 10 minutes past his scheduled departure time one day a week, and did not pay him for the additional time he worked.

179.    Plaintiff Ticun was never notified by Defendants that his tips were being included as an offset for wages.

180.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ticun's wages.

181.    Defendants withheld a portion of Plaintiff Ticun's tips; specifically, Defendants pocketed 15% of all the tips customers paid through Seamless and around 5% of all the credit card tips.

182.    Plaintiff Ticun was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

183.    In addition, in order to get paid, Plaintiff Ticun was required to sign a document in which Defendants misrepresented the hours that he worked per week.

184.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ticun regarding overtime and wages under the FLSA and NYLL.

185.    Defendants did not provide Plaintiff Ticun an accurate statement of wages, as required by NYLL 195(3).

186.    In fact, Defendants adjusted Plaintiff Ticun's paystubs so that they reflected inaccurate wages and hours worked.

187.    Defendants did not give any notice to Plaintiff Ticun, in English and in Spanish (Plaintiff Ticun's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

188.    Defendants required Plaintiff Ticun to purchase "tools of the trade" with his own funds—including one bicycle, a jacket, a lock, a bell, a vest and the bicycle's repairs.

*Defendants' General Employment Practices*

189.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

190.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked..

191.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

192.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

193.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

194.    These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

195.     Plaintiffs' duties were not incidental to their occupation as tipped workers , but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

196.    These Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

197.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

198.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

199.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

200.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

201.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

202.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Mena worked.

203.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

204.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

205.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

206.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

207.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

208.    Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

209.    Defendants paid Plaintiffs their wages in a combination of cash or personal checks and checks.

210.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

211.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

212.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

213.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

214.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that

payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

215.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

216.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

217.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

218.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

219.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

220.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

221.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

222.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

223.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

224.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

225.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

226.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

227.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

228.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

229.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

230.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

231.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

232.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

233.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

234.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

235.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

236.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

237.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

238.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

239.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

240.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

241.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

242.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

243.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

244.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

245.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

246.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

247.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

248.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

249.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

250.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

251.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

OF THE NEW YORK LABOR LAW

252.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

253.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

254.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

255.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

256.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

257.    Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION
### OF THE NEW YORK LABOR LAW

258.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

259.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

260.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted one hour from Plaintiff Mena's weekly pay whenever he arrived 15 minutes past his arrival time.

261.    The deductions made from Plaintiffs' wages were not authorized or required by law.

262.    Through their knowing and intentional efforts to take unauthorized deductions from

Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

263.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

264.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

265.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       August 13, 2018

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                          By:    /s/ Michael Faillace
                                 Michael Faillace [MF-8436]
                                 60 East 42nd Street, Suite 4510
                                 New York, New York 10165
                                 Telephone: (212) 317-1200
                                 Facsimile: (212) 317-1620
                                 *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

August 2, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Alejandro Mena Roque

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      _____

Date / Fecha:                           02 de agosto de 2018

_Certified as a minority-owned business in the State of New York_

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 2, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Elber Uliser Vasquez Miranda

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                *Elber Lopez*

Date / Fecha:                     2 de agosto 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

August 2, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         **Edin Liceth Yos Yaqui**

                                       Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                          02 de agosto de 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———

Faillace@employmentcompliance.com

August 2, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Alejandro Mena Roque

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        02 de agosto de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 2, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Marco Garcia Mendoza

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       02 de agosto de 2018